Good morning, your honors. Melissa Murphy-Petros on behalf of the Defendant Appellant Admiral Insurance Company. I would like to start, I'm sorry, I will reserve four minutes for my rebuttal. Just watch the clock, counsel, it counts down. I will, thank you. I would like to start by addressing the Scottsdale Insurance v. MV Transportation case that was cited to counsel in this court's order of last week. Scottsdale provides further compelling support for all of the arguments made in Admiral's briefs with respect to why Admiral is entitled to recover all of its defense costs advanced in the underlying action, and not just those which were advanced prior to the date on which it filed  This is so for a variety of reasons. Well, I think if rescission means that there never was any insurance policy to begin with, why should the timing of the rescission have any effect on what a party may recover as consequences to that rescission? I agree with your honor, what your honor may be implying. And the question is, should not have an effect. The policy, by virtue of the rescission finding, the policy is deemed void from the beginning, never came into place. Your argument, I assume, is based on the reservation of rights. Our argument for the reimbursement? Yes. Yes. We had a very explicit reservation of rights, which is contained in the record at document 28. In other words, under rescission, you have to pay back the premium. But under the reservation of rights, you can recoup the expenses that were directly related, I assume, and subject to that reservation. Is that your argument? Yes. That is our argument. But wouldn't it have been better if you had filed a claim for consequential damages? In that respect, and you're speaking then to the expenses incurred in the coverage litigation, we certainly did ask for any and all relief that the court would deem just and proper to award. California Civil Code Section 1692 certainly allows the district court or the state court to give anyone who obtains rescission that relief which justice may require or which the court, in its judgment, deems appropriate in order to adjust the equities. In this case, Admiral expended nearly $400,000 invest analyzing coverage, litigating coverage. Those damages are recoverable. And we believe that under Section 1692, we adequately sought them. Well, the district court didn't view you as putting him on notice that you were going to seek coverage expenses as well as the expenses and defending the underlying action. The district court, we did brief the coverage issue in our summary judgment motions. When I say the coverage issue, I'm referring to the expenses incurred in the coverage litigation. That was briefed before the judge in both summary judgment motions. Again, with all due respect to the district court, we do believe that we adequately sought those damages. We have submitted in the record all of the documentation supporting the figure. That's not disputed. You're right. The district court didn't agree with us on that point. Well, it seems your argument's a little bit damned if you do and damned if you don't, that you were really concerned about being hit for the big amounts. So you had to go for the rescission and then the rest of it. But then you still had to reserve rights. Because if you didn't do that, then you faced a whole other set of claims, right? Yes, that is correct. And as you'll recall, our coverage complaint was pled on five alternative grounds for no coverage, rescission being one of them. The summary judgment in the coverage action was brought on three alternative grounds, two, reformation and the date claim made would have simply resulted in a finding of no coverage, but without a premium refund. The court ultimately granted summary judgment in the coverage action only on the ground of rescission. So yes, in our reservation of rights letter, when we did agree to advance the defense costs, states very clearly that this is subject to a right to seek reimbursement in the event of either a declaration of no coverage or rescission. The letter mentions that you were on the hook for $5 million if you had to cover, right? That's correct. Yes. Do you really want to argue for a rule that means that every time you file a DEC action in an insurance case that all of the expenses and attorney's fees are in play for both sides? I mean, that's what you're arguing for here on just this limited amount of coverage. I mean, the general rule is you file a coverage action, everybody pays their own expenses, and it may settle or not. I don't think I've seen a case where either party gets their attorney's fees paid in a coverage action, but perhaps there is one. Well, we're certainly not asking for a broad rule that would apply regardless of the status of the pleadings. Our position is that we requested this as an element of damages. The district court declined our request. Well, why would not apply to every plaintiff who seeks a DEC action or defends one too? There would be no principled reason not to. I would agree that you're right. That would give the insured certainly a right to seek those costs as well. I mean, that's a better rule, but I don't think it's a rule in California. So it goes back to, do you want to win the battle and lose the war? Exactly. Well, you know what? And you're absolutely right about that. And I'm sure when you read the briefs and you notice the amount of space and argument devoted to the issue of the underlying defense costs that were expended, in a defense that I would point out was successful, the defense funded by Admiral resulted in a settlement that required zero payments from the directors and officers. So that was a substantial benefit to the insured. And I will agree wholeheartedly with you, Judge Callahan, that we'd be happy to win that battle. All right. Counsel, maybe we should hear from the other side at this point and see where we are. That's fine. Thank you. You may reserve the rest of the time. Thank you. Ms. Dumas. Thank you, Your Honors, and may it please the Court. This is an interesting issue. There are procedural implications. There are broad policy implications. And let me approach them in this manner. First, the Court's asking us to talk about Scottsdale, Connolly thinks is misplaced and not germane, and for the following reason. Scottsdale, in confirming the rule in Buss, in confirming the rule in Truck, in confirming the rule in, it's an established principle by the California Supreme Court, one on which the Court has announced its views many times. And that is where a duty to defend arises in a duty to defend policy. First of all, a D&O policy is not a duty to defend policy. That's a kind of a factual distinction on the type of insurance policy. But assuming we're in a duty to defend type of policy, duty to defend. It was a duty to defend under the D&O coverage, correct? Well, I realize it's not CJL. Yeah, no, but it's not a, now we're getting into very fine distinctions. But the directors, the insurance companies are sort of between a rock and a hard spot. If they don't reserve and they don't do something, then they face something much worse. We're going to a different issue now. The issue you're addressing is what was the nature of the action they took in the coverage case. There is no way around California statutory law for this panel that the policy was rescinded. The panel has, in its observations, sort of incorrectly, under California law, determined that this is a deck relief action, as though there had been a defense undertaken and a deck relief action that you would see in other circumstances. California's law may be unique, but rescission is a self-effectuating remedy. In other words, we don't have judicial rescission. You cannot do an action that hedges your bets, rescinding the policy, and then taking actions inconsistently with the fact that that policy is gone. It's void ab initio. So the insurer didn't do a deck relief action and assumption of a duty to defend. That's not what happened here. The specific question at issue here, in terms of the big picture policy, is what happens when the policy has been rescinded and the insured has been deprived of its rights to, for example, a settlement payment? Should the plaintiff in the underlying action receive a determination that a particular director or officer breached a fiduciary duty to that individual or the other underlying claim? But that didn't happen here. Yeah, that is what happened. No. What happened here is that the insurance company rescinded the policy. Now, on the facts of this case, they went ahead and they negotiated, based on the threat of a bad faith action by the plaintiffs in the underlying action, they went ahead and negotiated back away from the rescission. But that doesn't mean that policy is gone. So divorce yourselves from kind of the way it ended here. The policy is either rescinded or it is not rescinded. And this was rescinded under California. Therefore, it's void ab initio. Correct. It's void ab initio. I'm not following your argument, then. Therefore, again, we're looking 20-20 hindsight because the rescission was found in the subsequent action to have been proper. The policy implications are the following. Where the policy has been rescinded, the insured is going bare in the underlying action. The plaintiff in the underlying action, as well as the insured in the underlying action, know that the insurance company has staked its ground. You don't have insurance. Okay? You don't have insurance. The plaintiff in the underlying action and the insured both know when push comes to shove, if the plaintiff in the underlying action wins, there is no coverage. There will be no check written by any insurance company. It is to that individual's personal resources. That is going to have an impact on the dynamics and the resolution of the underlying action. That is why the favored approach is not rescission of a contract. Rescission is a disfavored remedy. That is why the approach that's been favored consistently by the California courts is assumption of a defense under a reservation of rights. Well, what if they, what if Admiral had filed an unjust enrichment claim? Would they be entitled to recovery under that here? No. And I can explain why. The reason it wouldn't be is because, well, okay, factually it's not entitled to in this case. Reason for that is the several insureds under the policy, one of them is the corporate entity. The others are individual officers and directors. In the underlying action, the corporate entity was not named as a defendant. Only the individuals. So the defense that was, the defense costs that were advanced didn't go to protect this particular insured. It went to protect the interests of the other insureds. Okay. There are two ways that under these facts in this case, one could try to make a finding of enrichment of the corporate entity. One of them is directly Admiral saying, notwithstanding the fact that you were a defendant and therefore we didn't advance any costs against you, we eliminated your obligation as a corporate employer to indemnify the individuals. Had they not had coverage, you would have had to pay them under state law, labor law or contract. And we've eliminated that for you. The reason that's not applicable in this case is because although the officers did file indemnification claims, this was a debtor. Those indemnification claims were out of the money because they were subordinated under Section 510B. There was no enrichment of the debtor because there was no, there was never going to be any. Was there ever a formal subordination order by the bankruptcy court?  510B is the subordination order. Well, I'm not the section, but I'm just saying was there an order? Yes. No, there's orders. And had the parties, and understandably because unjust enrichment, the principle behind the bus case is something that wasn't briefed at the lower court level. So your honors would have a different set of excerpts from the record had the parties been thinking about it. So anyway, one is the elimination of the indemnification claims, and the other is what Admiral didn't do in any one of a number of instances. And the court addressed this with respect to the questions about consequential damages, but it's not just consequential damages, it's even the reimbursement of defense costs. If Admiral wanted to get them back from a debtor in bankruptcy, it had to file a proof of claim. It knew that this was a debtor in bankruptcy. Claim under Section 101 sub 5 of the bankruptcy code is extremely broad and certainly broad enough to encompass a claim for unjust enrichment, a claim for damages, any kind. So it had to file a proof of claim and didn't. No one did. Counsel, would you address the comment or the argument made by your opposing counsel with respect to consequential damages? Why wasn't the reference to general relief enough to put the company on notice? Federal Rule of Civil Procedure 13b, an offset claim, a damages claim was required to be asserted by way of counterclaim. And Admiral, so Admiral didn't file a proof of claim in the bankruptcy. It didn't file a request for payment of administrative expense by the bar dates in the bankruptcy. And then in this litigation, interestingly, surprisingly, since Old Republic did file an answer and counterclaim, Admiral didn't. So Admiral never filed an answer in this reimbursement action and it never filed a counterclaim saying we are seeking either reimbursement of our defense costs or consequential damages. So procedurally, this court really shouldn't relieve Admiral of all these. Let me ask you about some California law that causes me some concern. You've got California Court of Appeal decisions in Imperial Casualty versus Sogomonium and then you've got L.A. Sound USA versus St. Paul, which they seem to suggest as a consequence of rescission, both parties should be put back where they were to their former positions. And so I'm wondering, wouldn't that include making the policyholder return any benefits received under the policy? And then also under Scottsdale, which you mentioned previously, it would seem to suggest that an insurer may defend an action against a policyholder while preserving its right to seek reimbursement of defense costs if there is no coverage. So when I look at both of those, why shouldn't that rule apply here and why shouldn't those California Court of Appeal cases suggest that they shouldn't get put back to their former positions and be able to seek that? Your Honor, the answer there is temporal. There has never been a California case which has considered the effect of an alleged payment, volunteer payment, after the rescission has been effected. So in Sogomonium and in the L.A. Sound case, in L.A. Sound what St. Paul did is it defended under a reservation of rights, it went ahead and settled the underlying litigation, and then the insured sued it for breach of contract, bad faith, et cetera, like they always do, and St. Paul cross-claimed for rescission. So the rescission occurred after they had already advanced these benefits under the policy. Okay? There has never been a case in this situation, which makes it so fascinating, where the insurer is essentially, as Judge Fogel kind of shrewdly saw, and Judge Ilston in the Atmel case shrewdly saw, what the insurance company is doing in these cases is it is volunteering a payment after having effected a rescission. So is that for the insurance company's benefit, hedging its bets against a subsequent bad faith case? Is it for the insured's benefit? I don't think so. It looks more like hedging its bets, because remember, there's no policy. But it sort of seems like it's to everyone's benefit. They made a strategy decision and your client benefited from it, so. Well, my client didn't benefit from it under these facts, but hypothetically a client, let's say there's one insured. Hypothetically there could be, but remember rescission changes, alters the dynamics. You have no insurance coverage. Now, we're hedging our bets against this bad faith action, and I think on balance that. Or an appeal. I'm sorry? Or an appeal. I mean, you may, I understand your position that rescission is a unilateral action and that's the end of it, but it may not be the final say in terms of judicial action. That's true. There may be subsequent litigation on that. But, again, policy determination, who's being enriched by a post rescission volunteer payment? Certainly the insurance company is protecting itself. Certainly the insured, in a hypothetical case, not this case, may be receiving some benefits. Does that benefit constitute unjust enrichment? What's important is that if both parties are benefiting from this post rescission hedging, if I were this Court with no California court having adopted a rule that says, yes, we're going to say that this hedging technique. Why do you call it hedging when actually we start with the backdrop of a fiduciary duty? Because they rescinded the policy. Yes, I understand that. But it's also taking steps to protect the insured. Now, I agree with you. It may have some other motives. It may say, I don't want to expose the company to bad faith. But part of exposure to bad faith is you're doing something that may be viewed as either outside the insurance code or in bad faith that would affect the insured's interest as well. So. Well, sure. I mean, you've said there's no contract here. I have no obligation to do this, but I'm going to do this anyway. Connolly would admit that that those actual checks being cut have a benefit to the insured. Those checks being cut have a benefit to the insurer. And the question in Buss is, is this Court directed, therefore, to undo an unjust enrichment? Well, I guess so. If you would admit that if Admiral had rescinded the policy, then paid benefits by accident, that they would be entitled to unjust enrichment. If the benefits under the policy had been conferred prior to rescission, established law. There is no law about post-rescission volunteer payments. No California court has addressed this. All right. Thank you, counsel. Your time has expired. Ms. Murphy-Petros, you have some reserved time. Thank you. I will just address a few quick points for you. Counsel is correct that the director's and officer's policy, just as a matter of a little background, is not a strict duty to defend policy. There is a duty, however, to advance defense costs as they are incurred. And that duty is typically interpreted by the courts akin with the duty to defend under a CGL policy. I mean, I understand they're separate, but the assets are different. Yes. Almost indistinguishable. With respect to the benefits that the insured. Well, yeah. I think Apelli seems to be indicating that there was no benefit to them, that you decided this was the best thing for you to do. And, therefore, there's no California case that says you're entitled to reimbursement for that so that we shouldn't go there. Well, certainly there was a benefit to Sonic Blue as a result of our defense. Again, she did mention the indemnification claims. The bankruptcy estate was relieved of any of that by virtue of our defense. With respect to this proof of claim, the proof of claim, and the record makes this clear, was due to be filed in the bankruptcy court by July 22nd of 2003, which is about two years before the underlying action was ever filed. So certainly to say that Admiral is not entitled to reimbursement because we didn't file a proof of claim for costs that had never at that point been expended I think is disingenuous. Well, there were some post-petition avenues, I expect. Yes. But, again, you know, as what I was about to say, our coverage complaint alleged five very distinct alternative forms of coverage defenses. All of them, had they been, any one of them, excuse me, had it been successful, would have rendered the underlying action a claim not potentially covered. And that's the key that Buss and Scottsdale looked at. Did they insure or defend under a reservation of rights to seek reimbursement of those defense costs where the claim is determined to never have been potentially covered? In this case, there was no way for us to know that a rescission claim would be successful. That rescission claim could have been unsuccessful. Under my opposing counsel's reasoning, had we succeeded on reformation instead, we would be entitled to get all of the defense costs back. To simply say, well, we filed our coverage complaint too soon, you know, she is correct. In L.A. Sound, the coverage complaint was, or excuse me, the counterclaim for rescission was filed after the underlying action had settled. That did not happen here. But under her reasoning, had we waited and filed our coverage action after settlement of the underlying action, we would get everything back. What's the difference? Well, I guess are you asking us to, you should win in an unpublished opinion so that you get what you want because what we say about California law doesn't really matter and so you're not really that concerned about what we say about California law and the parade of horribles that could occur otherwise? I think the California I mean, if we said this in a published opinion I think the California law under Buss and Scottsdale is very clear. We defended under a reservation. We made it very clear that we would seek reimbursement. That's in our policy. We cited Buss in that letter. We did everything that Buss and Scottsdale told us to do. We defended that underlying action to its conclusion, negotiated a settlement whereby the individual directors and officers paid zero. Under the district court's holding now, Admiral conferred 80 percent of that substantial benefit without receiving a policy premium. That's absolutely not what anybody contracted for. Counsel, with respect to the consequential damages issue, what is your response to the citation to Federal Rules of Civil Procedure 13b and your failure to counterclaim? My response simply is that, again, we do maintain that we adequately under Section 1692 that we adequately sought those damages. That's really all I can say about that. Anything further? No, other than we request reversal. Thank you very much, Counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, Callahan